IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| S. Steven Maese, | ) | OPINION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20100357-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (February 24, 2012) |
| Tooele County, | ) | |
| | ) | 2012 UT App 49 |
| Defendant and Appellee. | ) | |

-----

Third District, Tooele Department, 090301452
The Honorable Stephen L. Henriod

Attorneys:     Kelly Ann Booth, Salt Lake City, for Appellant
               Barton H. Kunz II, Salt Lake City, for Appellee

-----

Before Judges Davis, Roth, and Christiansen.

DAVIS, Judge:

¶1     S. Steven Maese appeals the trial court's grant of summary judgment in favor of Tooele County. We affirm.

BACKGROUND

¶2     Maese submitted a Government Records Access Management Act (GRAMA)[1] request in 2009 to the Tooele County Recorder requesting a copy of the county's

-----

[1]Portions of GRAMA have been amended since Maese filed his GRAMA request in 2009. Where substantive changes do not affect our analysis, we cite the most current version of the Utah Code for the reader's convenience.

"property transaction database, in the electronic format that Tooele keeps it, in its entirety," or alternatively, "a compiled transaction report, for the past 20 years, in electronic format."[2] *See also Maese v. Davis Cnty.*, 2012 UT App 48, ¶ 2, 273 P.3d 949, 2012 WL 592733 (companion case). The parties appeared to interpret Maese's request for a copy of the database as a request for a copy of the Tooele County Tax System (CTS) database itself, inclusive of but distinct from the records organized therein. *Cf. id.* ¶ 6 (noting that the parties did not interpret Maese's identical GRAMA request to Davis County in the same manner). The Tooele County Attorney's Office denied the request, explaining that in order to extract the property records information from the CTS database, "the County would have to either create a record or compile, format, manipulate, package, summarize, or tailor information[, which the] County is not required to do." (Internal quotation marks omitted.) *See generally* Utah Code Ann. § 63G-2-201(8)(a)-(a)(iii) (2011) ("In response to a request, a governmental entity is not required to: (i) create a record; (ii) compile, format, manipulate, package, summarize, or tailor information; [or] (iii) provide a record in a particular format, medium, or program not currently maintained by the governmental entity . . . ."). Similarly, the Tooele County Attorney's Office denied Maese's alternative request for a twenty-year transaction report, stating, "[T]he County does not maintain a 'compiled' transaction report." Finally, the Tooele County Attorney's Office informed Maese that "[t]he County property records are available for inspection and copying, including scanned images."

¶3      Maese appealed this decision to the Tooele County Commission Chair, who upheld the denial and reiterated that "[t]he records kept in the County Recorder's Office are readily available for inspection and copying" during normal business hours. Maese then filed a complaint in the trial court appealing the County Commission Chair's decision to uphold the denial of his GRAMA request. Tooele County moved for summary judgment and supported its motion with a declaration from the Tooele County Information Technology Department Director (the county declaration). The trial court granted Tooele County's motion for summary judgment, stating, "The unambiguous language of the statute provides that [Tooele County] is not required to create a special record for [Maese] or[] provide [Maese] with an electronic copy of its

---

[2]Maese submitted a separate request that more specifically sought "[t]he property transaction database, in the SQL format that Tooele County keeps it, in its entirety," which was similarly denied. Maese appealed only the denial of the first request described in the text above.

records if there is a paper equivalent." *See generally id.* § 63G-2-201(12) (2008) ("A governmental entity may provide access to an electronic copy of a record in lieu of providing access to its paper equivalent.") (current version at *id.* § 63G-2-201(12) (2011)). Maese appeals this decision.

ISSUES AND STANDARDS OF REVIEW

¶4 Maese raises two arguments on appeal. First, he argues that his assertion that the Tooele County property database itself is a public record is a factual allegation that the trial court was obligated to accept as true in ruling on Tooele County's motion for summary judgment. Maese argues that because of this error, the trial court incorrectly granted summary judgment when genuine issues of material fact were still in dispute. Second, Maese argues that the trial court's ruling implicitly and erroneously determined that "a government entity complies with GRAMA when it provides access to records instead of requested copies of records." (Emphasis omitted.)

¶5 Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Bingham v. Roosevelt City Corp.*, 2010 UT 37, ¶ 10, 235 P.3d 730 (internal quotation marks omitted). To the extent our analysis requires us to interpret GRAMA, we "look first to its plain language," *Valcarce v. Fitzgerald*, 961 P.2d 305, 318 (Utah 1998), and interpret its terms "in accord with their usual and accepted meanings," *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1045 (Utah 1991).

ANALYSIS

I. Material Question of Fact

¶6 Maese asserts that summary judgment was inappropriate because the parties disputed a material issue of fact, namely, whether the database is a public record under GRAMA. While it is true that summary judgment is inappropriate where a "genuine issue as to any material fact" exists, *see* Utah R. Civ. P. 56(c), the characterization of the database under GRAMA is a legal question, not a factual question. "Factual questions

are generally regarded as entailing the empirical, such as things, events, actions, or conditions happening, existing, or taking place, as well as the subjective, such as state of mind." *State v. Pena*, 869 P.2d 932, 935 (Utah 1994). On the other hand, "[l]egal determinations . . . are defined as those which are not of fact but are essentially of rules or principles uniformly applied to persons of similar qualities and status in similar circumstances." *Id.* Here, the characterization of the database under GRAMA rests primarily on an interpretation of GRAMA, namely, its definition section and various exceptions. Such an interpretation undoubtedly constitutes a determination that would be "applied to persons of similar qualities and status in similar circumstances," *id.*, and therefore presents a legal question. *See State v. Larsen*, 865 P.2d 1355, 1357 (Utah 1993) ("The correct interpretation of a statute is a question of law . . . ."); *cf. State v. Dunn*, 850 P.2d 1201, 1222 n.22 (Utah 1993) (determining that the "characterization [of a photograph] as 'gruesome' is less a factual question than a legal one because it is a predicate for shifting the presumption of admissibility that normally obtains under rule 403" of the Utah Rules of Evidence).

¶7      The factual assertions in the record include those made in the county declaration, which elaborated on the assertions made in Tooele County's initial denial letter to Maese. The county declaration explained that although the CTS database was "written" in a "commercially available" program (Microsoft SQL Server), "the county still needed to create schema and database diagrams in order to shape the . . . CTS database." The county declaration noted that "[t]hese unique schema, diagrams, and routines underlying the CTS make it a computer program composed of proprietary software" that would unavoidably be disclosed when "[p]roducing the CTS database in electronic format," as Maese requested. Additionally, the county declaration asserted that "[b]ecause of the way the county created and developed the CTS database, information from county property transaction records have been integrated with other county records, such as the county tax rolls," and that "[t]o produce information from only the property transaction records contained in the CTS database would require the county to create a new database or compile, format, package, or tailor information from the CTS database."

¶8      Maese disputes these assertions, relying on statements in an affidavit (the IT affidavit) that he submitted with his memorandum opposing summary judgment. The IT affidavit contains factual statements from an individual who works in information technologies that dispute most of the assertions made by Tooele County and in the county declaration. However, the IT affidavit was stricken from the record on foundational grounds, and Maese did not appeal that decision. Indeed, Maese

acknowledges that the IT affidavit was stricken but nonetheless relies on it in his appellate brief without any attempt to argue that it should not have been stricken. Because the IT affidavit was stricken and Maese has not challenged the propriety of the trial court's decision to strike it, the IT affidavit is not properly on the record before us and we do not rely on it in our analysis.

¶9     As a result of the IT affidavit being stricken, Maese's opposition to Tooele County's motion for summary judgment was reduced to an affidavit from his attorney seeking discovery (the attorney affidavit), and unsupported assertions in his memorandum disputing Tooele's factual claims. Reviewing the attorney affidavit first, we note that Maese titled it, "Rule 56(f) Affidavit," presumably as a means to request a continuance of the summary judgment motion. *See generally* Utah R. Civ. P. 56(f) (providing the trial court with the discretion to order a continuance in order to permit the party opposing summary judgment additional time to obtain affidavits, take depositions, or conduct the discovery necessary to oppose the motion). The trial court, however, did not treat the attorney affidavit this way, and Maese does not argue on appeal that his rule 56(f) request was impermissibly overlooked by the trial court. Accordingly, we do not address the issue of whether the discovery requests in the attorney affidavit indicate that a continuance should have been granted and instead consider the affidavit for its factual value because this is the basis upon which Maese uses the attorney affidavit in his arguments on appeal.

¶10     The attorney affidavit raises four issues. First, the attorney affidavit asserts that discovery is needed to determine "whether the County has developed an electronic database for use by the tax department and the county recorder's office known as the [CTS]." However, in the next sentence, the attorney affidavit contradicts this assertion by describing the CTS database, its contents, and how it was created. Thus, the attorney's first request for discovery seems to be mooted by her knowledge of the information that the discovery request presumably sought. Second, the attorney affidavit requests discovery to determine whether private and public data are inextricably linked within the CTS database because GRAMA requires "governmental entities to segregate or redact private data from public data housed within the same record." This issue, however, was mooted when Tooele County withdrew its assertion that the database contained both public and private data. Third, the attorney affidavit asserts that "[d]iscovery is needed on the issue of whether the way the County created and developed the CTS database integrated information from county property transaction records . . . with other county records, such as the county tax rolls." And lastly, the affidavit seeks discovery "on the issue of whether the County can produce

information from only the property transaction records contained in the CTS database [and whether that] would require the County to create a new database or compile, format, package, or tailor information from the CTS database."[3] These final two discovery requests, however, merely raise the possibility that a issue of material fact may exist. They do not otherwise rebut or create such an issue of fact and, as stated before, Maese does not dispute the trial court's failure to definitively rule on his discovery requests for rule 56(f) purposes. *Cf. Energy Mgmt. Servs. LLC, v. Shaw,* 2005 UT App 90, ¶ 8, 110 P.3d 158 (reviewing the trial court's failure to exercise its discretion by ruling on a party's rule 56(f) motion where the party affirmatively challenged that failure on appeal).

¶11    Aside from the statements in the attorney affidavit and the stricken IT affidavit, Maese's memorandum opposing summary judgment contains few factual challenges. The memorandum labels several of Tooele County's statements of facts from its motion for summary judgment as "immaterial and irrelevant," which does little to create a dispute of fact. The memorandum also provides dictionary definitions for technical terms relevant to the case, like "database" and "software," and argues how the definitions enumerated in GRAMA do not support Tooele County's arguments that the database is not a public record. As discussed above, however, the classification of the database under GRAMA is ultimately a legal issue, not a factual one. Lastly, in his memorandum opposing summary judgment, Maese responds to Tooele County's statement that the "property transaction records have been integrated with other county records, such as the county tax rolls," by stating that, "to the extent that tax data is public," Maese would "accept that data as well." This response, however, does not create a conflict in the facts, nor does it dispute whether "other county records" in addition to the tax data and property data would still need to be segregated from the CTS database in order to provide Maese with a copy.

¶12    Accordingly, we are not convinced that Maese adequately disputed a material issue of fact on summary judgment. The attorney affidavit and assertions in Maese's memorandum opposing summary judgment do not effectively dispute the factual statements enumerated in Tooele's motion for summary judgment and supported by the county declaration, the "face of" which does not "affirmatively disclose[] the

---

[3]Interestingly, the latter two enumerated statements in the attorney affidavit echo, and to an extent contradict, sections of the IT affidavit that assert that information is easy to segregate and copy in databases like the CTS database.

existence of" an issue of material fact, *see Walter v. Stewart*, 2003 UT App 86, ¶ 24, 67 P.3d 1042 (emphasis and internal quotation marks omitted). "[W]hen the moving party has presented evidence sufficient to support a [summary] judgment in its favor, and the opposing party fails to submit contrary evidence, a trial court is justified in concluding that no genuine issue of fact is present or would be at trial." *Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 957 (Utah Ct. App. 1989). Thus, the trial court could properly rule on summary judgment because there were no "genuine issue[s] as to any material fact[s]," Utah R. Civ. P. 56(c).

## II. Exceptions to GRAMA

¶13 In its summary judgment ruling, the trial court did not directly determine whether the database was a public record under GRAMA. Rather, the trial court concluded that several exceptions within GRAMA applied, affirming Tooele County's denial of Maese's GRAMA request. Like the trial court, we also decline to directly rule on the characterization of the database and instead conclude that, even if it were a public record, under the facts and circumstances of this case GRAMA does not require Tooele County to disclose it.

¶14 GRAMA ensures "the public's right of access to information concerning the conduct of the public's business." Utah Code Ann. § 63G-2-102(1)(a) (2011). It accomplishes this by protecting "[e]very person['s] . . . right to inspect a public record free of charge, and the right to take a copy of a public record during normal working hours."[4] *Id.* § 63G-2-201(1). However, GRAMA does not require a governmental entity to "(i) create a record; (ii) compile, format, manipulate, package, summarize, or tailor information; [or] (iii) provide a record in a particular format, medium, or program not currently maintained by the governmental entity." *Id.* § 63G-2-201(8)(a)(i)-(iii).

¶15 The county declaration asserts that in order "[t]o produce information from only the property transaction records contained in the CTS database[,] . . . the county [would have] to create a new database or compile, format, package, or tailor information from

---

[4]This is subject to Utah Code section 63G-2-203, which permits "[a] governmental entity" to "charge a reasonable fee to cover the . . . actual cost of providing a record," Utah Code Ann. § 63G-2-203(1) (2011), and to Utah Code section 63G-3-204, which pertains to the amount of time the governmental entity has to respond to a request, *see id.* § 63G-2-204.

the CTS database." This assertion applies both to Maese's request for a copy of the property transaction database and to his alternative request for a twenty-year "compiled transaction report." As previously discussed, without his IT affidavit on the record, the assertions in Maese's memorandum opposing summary judgment lack support and are insufficient to contradict Tooele County's factual statements. *See supra* ¶¶ 11-12. In light of Maese's failure to support his arguments in opposition to summary judgment with an admissible or helpful affidavit, we are left with Tooele County's factual statements. Where a motion for summary judgment is supported by affidavit or other acceptable evidence under rule 56(e) of the Utah Rules of Civil Procedure, a party's "fail[ure] to file counter affidavits or other evidentiary materials on [an] issue as required by Rule 56(e)" leaves the court with no choice but to "view the facts as presented by [the movant] as uncontested." *See Scott v. Majors*, 1999 UT App 139, ¶ 17, 980 P.2d 214. Consequently, we conclude that the trial court correctly determined that both of Maese's requests would require Tooele County to "create a record," "compile" information, or otherwise "provide a record in a particular format" that it does "not currently maintain[],"[5] *see* Utah Code Ann. § 63G-2-201(8)(a)(i)-(iii).

### III. Access to Records Versus Copies of Records

¶16 Maese also argues that the trial court's grant of summary judgment was incorrect because it implicitly ruled that access to records is sufficient to satisfy a request for a copy of a record. Maese asserts that "GRAMA fails to permit this substitution." We disagree with Maese's interpretation of GRAMA.

¶17 GRAMA was enacted to protect two "constitutional rights: (a) the public's right of *access* to information concerning the conduct of the public's business; and (b) the right of privacy in relation to personal data gathered by governmental entities." *Id.* § 63G-2-102(1) (emphasis added). In terms of copies, GRAMA ensures that "[e]very person has . . . the right to take a copy of a public record during normal working hours." *Id.*[6] In other words, GRAMA does not necessarily require the governmental

---

[5]Tooele County argues that several other GRAMA exceptions apply to preclude Maese's request. Because satisfaction of one GRAMA exception is sufficient to uphold the trial court's grant of summary judgment, we do not address whether any of the other exceptions raised by Tooele County might also apply.

[6]GRAMA also establishes a means for individuals to obtain certified copies of

(continued...)

entity to provide a person with a copy of a public record merely because it was requested, but only that the record be accessible for the public to make a copy "during normal working hours," *id.* Tooele County satisfied this obligation, providing the public with access to the property records Maese requested and permitting people to take copies or scans of the records "during normal working hours," *id.*

¶18    The parties, however, appeared to understand Maese's primary request for an electronic copy of the CTS database as distinct from a request for just the property records contained therein. *Cf. Maese v. Davis Cnty.,* 2012 UT App 48, ¶ 5, 273 P.3d 949 (recognizing Maese's argument that the property records database itself was distinct from property records contained therein because the database itself contained unique metadata). Because of this distinction, Maese argues that access to the paper records is not an effective substitute for his request for a copy of the database itself.[7] Nevertheless, Maese framed his request as an "either/or," indicating that he would be satisfied with either an electronic copy of the database or a twenty-year compiled transaction report. Therefore, obtaining a copy of the electronic database was not the exclusive means of

---

[6](...continued)
records, which Maese did not specifically request. *See* Utah Code Ann. § 63G-2-201(7) (2011). Additionally, GRAMA permits the governmental entity discretion to fulfill requests for copies of "more than 50 pages of records" only if certain conditions are met. *See id.* § 63G-2-201(9).

[7]Notwithstanding this assertion, at oral argument Maese's counsel explained that the "metadata" connected to the database file consists of all of "the information that . . . gets linked to a title," including "information about . . . the documents that were recorded on that parcel, in sequence, . . . when they were recorded, . . . [and] the order of recording [of those documents]," as well as "the information entered by the clerk at the time [a document] is presented to the county recorder's office." Counsel for Tooele County elaborated on this explanation at oral argument, noting that the information Maese described as metadata is "culled from the actual paper documents that are filed with the county recorder's office, and those paper documents are available through [a free online] system" that contains scanned images of the original documents. Tooele County also explained that "accessing those images [through the free online system] would probably take additional work, but you could track down the information;" it is just "available more quickly through the CTS database."

satisfying Maese's GRAMA request. The trial court determined that access to the paper records was sufficient to fulfill Maese's request, and Maese does not argue that the twenty years of property transaction data are unavailable in the property records or formats that Tooele County made publicly available. In other words, we do not see why Maese could not compile his own twenty-year transaction report from the records made publicly available, thereby satisfying his GRAMA request. Additionally, at the time of Maese's request, GRAMA stated, "A governmental entity *may* provide access to an electronic copy of a record in lieu of providing access to its paper equivalent." Utah Code Ann. § 63G-2-201(12) (2008) (emphasis added) (current version at *id.* § 63G-2-201(12) (2011)).[8] Under the facts and circumstances of this case, GRAMA's "plain language," *see Valcarce v. Fitzgerald*, 961 P.2d 305, 318 (Utah 1998), does not require Tooele County to provide Maese with a copy of its electronic database when he could presumably fulfill his GRAMA request himself by compiling a twenty-year transaction report with the access to the property records and copying capabilities that Tooele County provided. Accordingly, we affirm.

---

[8]Subsection 12 was amended in 2010, *see* Utah Code Ann. § 63G-2-201 amend. notes (2011), and now states,

> (12) Subject to the requirements of Subsection (8), a governmental entity shall provide access to an electronic copy of a record in lieu of providing access to its paper equivalent if:
>> (a) the person making the request requests or states a preference for an electronic copy;
>> (b) the governmental entity currently maintains the record in an electronic format that is reproducible and may be provided without reformatting or conversion; and
>> (c) the electronic copy of the record:
>>> (i) does not disclose other records that are exempt from disclosure; or
>>> (ii) may be segregated to protect private, protected, or controlled information from disclosure without the undue expenditure of public resources or funds.

*Id.* § 63G-2-201(12). We do not decide whether Tooele County would have been required to provide Maese with a copy of the database, assuming that it is a public record under GRAMA, under the new version of the statute.

CONCLUSION

¶19    The trial court properly ruled on Tooele County's motion for summary judgment because no material questions of fact existed.  Tooele County did not have to provide Maese with an electronic copy of the database or a twenty-year transaction report because doing so would require it to "create a record" and "compile" information in a "format" that it did "not currently maintain[]," in contravention of GRAMA.  *See* Utah Code Ann. § 63G-2-201(8)(a)(i)-(iii) (2011).  Tooele County informed Maese that he could access and copy the property transaction records he sought, providing him the means to compile his own property transaction report.  We therefore conclude that Tooele County satisfied its obligation under GRAMA and affirm the trial court's grant of summary judgment to Tooele County.


_____
James Z. Davis, Judge


-----


¶20    WE CONCUR:



_____
Stephen L. Roth, Judge



_____
Michele M. Christiansen, Judge