IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| S. Steven Maese, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20100663-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (February 24, 2012) |
| Davis County, | ) | |
| | ) | 2012 UT App 48 |
| Defendant and Appellee. | ) | |

-----

Second District, Farmington Department, 090700674
The Honorable Rodney S. Page

Attorneys:    Kelly Ann Booth, Salt Lake City, for Appellant
              William K. McGuire and Neal C. Geddes, Farmington, for Appellee

-----

Before Judges Davis, Roth, and Christiansen.

DAVIS, Judge:

¶1      S. Steven Maese appeals the trial court's grant of Davis County's motion to dismiss Maese's complaint for failing to state a claim for which relief can be granted, *see* Utah R. Civ. P. 12(b)(6).  We affirm.

¶2      On appeal, Maese argues that the facts contained in his complaint necessarily preclude dismissal, noting that "a trial court must accept all facts as alleged by the plaintiff as true" when ruling on a rule 12(b)(6) motion to dismiss.  Specifically, Maese's complaint alleges that "the Davis County property transaction database is [itself] a public record . . . that Davis County failed to give him a copy of" after he submitted a Government Records Access Management Act (GRAMA) request.  Specifically, his request sought "a copy of: [t]he property transaction database, in the electronic format that Davis County keeps it, in its entirety," or alternatively, "a compiled transaction report, for the past 20 years, in electronic format."  *See Maese v. Tooele Cnty.*, 2012 UT

App 49, ¶ 2 (companion to this case in which Maese submitted the same GRAMA request to Tooele County).

¶3       "Whether a trial court properly granted a rule 12(b)(6) motion to dismiss is a question of law that we review for correctness, affording the trial court's decision no deference." *Miller v. State*, 2010 UT App 25, ¶ 6, 226 P.3d 743 (internal quotation marks omitted). "Rule 12(b)(6) allows a respondent to move for dismissal of any petition which the respondent believes 'fail[s] to state a claim upon which relief can be granted.'" *Id.* ¶ 16 (alteration in original) (quoting Utah R. Civ. P. 12(b)(6)). "Accordingly, [a] rule 12(b)(6) motion to dismiss admits the facts alleged in the [petition] but challenges the [petitioner]'s right to relief based on those facts." *Id.* (alterations in original) (internal quotation marks omitted). To the extent our analysis requires us to interpret GRAMA, we "look first to its plain language," *Valcarce v. Fitzgerald*, 961 P.2d 305, 318 (Utah 1998), and interpret its terms "in accord with their usual and accepted meanings," *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1045 (Utah 1991).

¶4       GRAMA ensures "the public's right of access to information concerning the conduct of the public's business." Utah Code Ann. § 63G-2-102(1)(a) (2011).[1] It accomplishes this by protecting "[e]very person['s] . . . right to inspect a public record free of charge,[2] and the right to take a copy of a public record during normal working hours." *Id.* § 63G-2-201(1). However, GRAMA does not require "a governmental entity" to

> fill a person's records request if:  (A) the record requested is accessible in the identical physical form and content in a public publication or product produced by the governmental entity receiving the request; (B) the governmental entity

---

[1]Portions of GRAMA have been amended since Maese filed his GRAMA request in 2009.  Where substantive changes do not affect our analysis, we cite the most current version of the Utah Code for the reader's convenience.

[2]This is subject to Utah Code section 63G-2-203, which permits "[a] governmental entity" to "charge a reasonable fee to cover the . . . actual cost of providing a record," Utah Code Ann. § 63G-2-203(1) (2011), and to Utah Code section 63G-3-204, which pertains to the amount of time the governmental entity has to respond to a request, *see id.* § 63G-2-204.

> provides the person requesting the record with the public
> publication or product; and (C) the governmental entity
> specifies where the record can be found in the public
> publication or product.

*Id.* § 63G-2-201(8)(a)(v).

¶5     Here, Davis County responded to Maese's request by declining to provide him with a full electronic copy of the property records database because the requested records could be accessed for free at the Recorder's Office and electronically through Davis County's online Redi-Web system.  On appeal, Maese contends that the database he requested is not "identical [in] physical form or content," *see id.*, to hard copies of the requested records or to the Redi-Web system, arguing that the "[d]atabase [itself] is a new and independent public record greater than the sum of its parts[ because] it contains metadata and other variables [that are] not available online or through paper copies."[3]  Maese argues that these assertions in his complaint, describing the database as

---

[3]Other courts have defined metadata "as data about data," or "information describing the history, tracking, or management of an electronic document," *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 646 (D. Kan. 2005) (internal quotation marks omitted); *see also id.* at 652-53 (determining that metadata contained in the defendant's electronic spreadsheet documents was discoverable to the extent it was relevant).  An electronic document's metadata could include "a file's name, a file's location . . . , file format or file type, file size, [and] file dates (e.g., creation date, date of last data modification, date of last data access, and date of last metadata modification), and file permissions." *Id.* at 646.  Metadata also consists of "the hidden text, formatting codes, formulae, and other information associated with an electronic document." *Aguilar v. Immigration & Customs Enforcement Div. of the U.S. Dept. of Homeland Sec.*, 255 F.R.D. 350, 354 (S.D.N.Y. 2008) (internal quotation marks omitted).  Metadata is not always readily visible to users "who are not technically adept," and "[m]ost metadata is generally not visible when a document is printed." *Williams*, 230 F.R.D. at 646.  Maese does not describe the metadata that he asserts is a component of the Redi-Web database, but in the companion case his counsel at oral argument described the metadata as "the information that all gets linked to a title," including "information about . . . all the documents that were recorded on that parcel, in sequence, . . . when they were recorded, . . . [and] the order of recording [of those documents]," as well as "the information entered by the clerk at the time [a document] is presented to the county

(continued...)

a distinct public record, are factual and that the trial court therefore had to consider them at face value. We disagree and determine that Maese's assertions regarding the classification of the database under GRAMA are legal conclusions, not factual statements. *See Maese*, 2012 UT App 49, ¶ 6. The trial court, therefore, was not bound by these assertions in ruling on Davis County's motion to dismiss. *See generally Chapman ex rel. Chapman v. Primary Children's Hosp.*, 784 P.2d 1181, 1186 (Utah 1989) ("[M]ere conclusory allegations in a pleading, unsupported by a recitation of relevant surrounding facts, are insufficient to preclude dismissal . . . .").

¶6     Further, GRAMA states, "A person making a request for a record shall furnish the governmental entity with a written request containing . . . a description of the record requested that identifies the record with reasonable specificity." Utah Code Ann. § 63G-2-204(1) (2011). Here, the face of the GRAMA request Maese submitted to Davis County does not describe the same records Maese now alleges he sought. Maese's original request sought a copy of "[t]he property transaction database, in the electronic format that Davis County keeps it in, in its entirety," or "a compiled transaction report, for the past 20 years, in electronic format." However, Maese now asserts that his original GRAMA request was for a copy of the "[d]atabase itself," which contains information inaccessible in paper or online format, namely, "metadata and other variables." Impliedly then, Maese is now framing his GRAMA request as seeking a copy of the database because of its "metadata and other variables," which he asserts differentiate the database itself as a separate public record that is distinct from the property records organized within the database. This demonstrates that Maese's assertion on appeal—that he was wrongly denied a copy of the database itself—is unsupported by the record because Maese did not ask Davis County for a copy of the database itself, as a distinct public record, and Davis County did not interpret his request as such. *Cf. Maese*, 2012 UT App 49, ¶ 2 (determining that both parties understood Maese's request for a copy of the database as distinct from a request for a copy of the records contained therein). Rather, Maese asked Davis County for a copy of the database *or* a twenty-year transaction report. Further, a compiled transaction report would have provided Maese with different metadata than a copy of the database. Thus, his argument on appeal, framing his request as one for a copy of the database itself and its accompanying metadata, is unavailing in light of the fact that Maese, presumably, would have been satisfied if Davis County fulfilled his alternative request by providing

---

³(...continued)
recorder's office," which does not seem to accord with the definition of metadata employed in the above case law. *See Maese v. Tooele Cnty.*, 2012 UT App 49, ¶18 n.7.

a compiled transaction report, which, applying the definition of metadata used in *Williams v. Sprint/United Management Co.*, 230 F.R.D. 640 (D. Kan. 2005), *see id.* at 646, would have inevitably contained different metadata than the database itself because metadata attached to an electronic file is unique to that file. *See supra* ¶ 5 note 3; *see generally Aguilar v. Immigration & Customs Enforcement Div. of the U.S. Dept. of Homeland Sec.*, 255 F.R.D. 350, 354-55 (S.D.N.Y. 2008). Consequently, the trial court was correct not to directly rule on the validity of the legal assertion in Maese's complaint—that the database itself is a distinct public record. And because Maese's original GRAMA request did not clearly seek a copy of the database itself in order to access its metadata and other hidden variables, we too decline to determine whether the database file, its metadata, or other hidden variables constitute public records under GRAMA.

¶7     We now determine whether Davis County sufficiently complied with the GRAMA request Maese actually submitted. We agree with the trial court that GRAMA was satisfied when Davis County made the records Maese requested "accessible in the identical physical form and content" via its Redi-Web system and informed Maese of such. *See* Utah Code Ann. § 63G-2-201(8)(a)(v)(A). Davis County also informed Maese that he could access the requested "public record[s] free of charge" by visiting the Recorder's Office and explained to him that he could "copy. . . [the requested] public record[s] during normal working hours." *See id.* § 63G-2-201(1). As Davis County stated in its response letter to Maese, his records request was granted.

¶8     Further, GRAMA does not require Davis County to fulfill Maese's alternative request for "a compiled transaction report, for the past 20 years, in electronic format." On the contrary, GRAMA expressly states, "In response to a request, a governmental entity is not required to:  (i) create a record; (ii) *compile*, format, manipulate, package, summarize, or tailor information; [or] (iii) provide a record in a particular format, medium, or program not currently maintained by the governmental entity." *Id.* § 63G-201-8(a)(i)-(iii) (emphasis added). Maese does not argue that his request for a "compiled transaction report" would not require Davis County to actually "compile" a transaction report. Thus, assuming that this request would, in fact, require Davis County to compile a report, we determine that Davis County was under no obligation to do so. *See Maese v. Tooele Cnty.*, 2012 UT App 49, ¶ 18 (concluding that having access to the Tooele County property records and the ability to take copies of those records satisfied Maese's GRAMA request because it provided Maese with the means to assemble a twenty-year compiled transaction report on his own).

¶9     Last, Maese argues that GRAMA was not satisfied when Davis County provided him access to the database, rather than a copy of it, when his request was specifically for

a copy. *See id.* ¶¶ 16-18 (addressing the same argument). We disagree. GRAMA was enacted to protect "two constitutional rights: (a) the public's right of *access* to information concerning the conduct of the public's business; and (b) the right of privacy in relation to personal data gathered by governmental entities." Utah Code Ann. § 63G-2-102(1) (2011) (emphasis added). In terms of copies, GRAMA ensures that "[e]very person has . . . the right to take a copy of a public record during normal working hours." *Id.* § 63G-2-201(1).[4] In other words, GRAMA does not necessarily require the governmental entity to provide a person with a copy of a public record merely because it was requested, but only that the record be accessible for the public to make a copy "during normal working hours," *id.* Davis County provided that access at the Recorder's Office and informed Maese of such. Additionally, at the time of Maese's request, GRAMA stated, "A governmental entity *may* provide access to an electronic copy of a record in lieu of providing access to its paper equivalent." *Id.* § 63G-2-201(12) (2008) (emphasis added) (current version at *id.* § 63G-2-201(12) (2011)).[5] In other words,

---

[4]GRAMA also establishes a means for individuals to obtain certified copies of records, which Maese did not specifically request. *See* Utah Code Ann. § 63G-2-201(7) (2011). Additionally, GRAMA permits the governmental entity discretion to fulfill requests for copies of "more than 50 pages of records" only if certain conditions are met. *See id.* § 63G-2-201(9).

[5]Subsection 12 was amended in 2010, *see* Utah Code Ann. § 63G-2-201 amend. notes (2011), and now states,

> (12) Subject to the requirements of Subsection (8), a governmental entity shall provide access to an electronic copy of a record in lieu of providing access to its paper equivalent if:
>
> (a) the person making the request requests or states a preference for an electronic copy;
>
> (b) the governmental entity currently maintains the record in an electronic format that is reproducible and may be provided without reformatting or conversion; and
>
> (c) the electronic copy of the record:
>
> (i) does not disclose other records that are exempt from disclosure; or
>
> (ii) may be segregated to protect private, protected, or controlled information from disclosure without the undue expenditure of public resources or funds.
>
> (continued...)

GRAMA did not require Davis County to provide Maese with the electronic copy of the database requested. We do not see how GRAMA, by its "plain language," *see Valcarce v. Fitzgerald*, 961 P.2d 305, 318 (Utah 1998), would otherwise require Davis County to provide Maese with a copy of the database simply because that is the format he preferred.

¶10    In conclusion, GRAMA did not require Davis County to compile a twenty-year transaction report, nor did it require Davis County to provide Maese with an electronic copy of the entire property records database. Rather, Davis County satisfied its obligations under GRAMA when it informed Maese that he could access and copy the requested records through its Redi-Web system and at the Recorder's Office, and explained to Maese how to do so. Accordingly, we affirm.

_____
James Z. Davis, Judge

-----

¶11    WE CONCUR:

_____
Stephen L. Roth, Judge

_____
Michele M. Christiansen, Judge

_____

    [5](...continued)
*Id*. § 63G-2-201(12). We do not address whether and to what extent this amendment to the statute would affect Maese's request had it been effective at the time he made his original GRAMA request.