2010 UT App 25

**Harry MILLER, Petitioner and Appellant,**

v.

**STATE of Utah, Respondent and Appellee.**

**Rocky Mountain Innocence Center, Amicus Curiae.**

No. 20080921–CA.

Court of Appeals of Utah.

Feb. 4, 2010.

W. Andrew McCullough, Midvale, for Appellant.

Mark L. Shurtleff, Atty. Gen., Scott W. Reed, and Erin Riley, Asst. Attys. Gen., Salt Lake City, for Appellee.

Troy L. Booher and Jensie L. Anderson, Salt Lake City, for Amicus Curiae Rocky Mountain Innocence Center.

Before Judges DAVIS, BENCH, and GREENWOOD.[1]

---

1. Judges Russell W. Bench and Pamela T. Greenwood heard this case as regular members of the Utah Court of Appeals. They both retired from the court on January 1, 2010, before this Amended Opinion issued. Hence, they are designated herein as Senior Judges. *See* Utah Code Ann. § 78A–3–103(2) (2008); Sup.Ct. R. of Prof'l Practice 11–201(6).

## AMENDED OPINION[2]

GREENWOOD, Senior Judge:

¶ 1 Petitioner Harry Miller appeals the trial court's grant of the State's motion to dismiss his petition for failure to state a claim. *See* Utah R. Civ. P. 12(b)(6). More specifically, Miller argues that the trial court erred as a matter of law in determining that he had not made a showing sufficient to warrant a hearing regarding his factual innocence under Utah Code section 78B–9–402. *See* Utah Code Ann. § 78B–9–402 (Supp. 2009). Because we determine that Miller's petition presents a "bona fide issue as to whether [he] is factually innocent of the charges of which [he] was convicted," *see id.* § 78B–9–402(6)(b)(i), we reverse and remand for a hearing to determine Miller's factual innocence.

## BACKGROUND

¶ 2 Miller was arrested in 2003 and charged with aggravated robbery stemming from an incident that took place in Salt Lake County, Utah, "on or about December 8, 2000." Miller presented an alibi defense at trial based on his assertion that he was in his home state of Louisiana at the time the crime was committed; however, Miller himself was the only witness to offer testimony in support of this defense. Miller was convicted by a jury and was sentenced, in February 2004, to a prison term of five years to life.

¶ 3 On direct appeal of his conviction, Miller argued that his trial counsel was ineffective because "other alibi witnesses could have, and should have, been obtained" to testify on Miller's behalf. After determining that there were insufficient factual findings with which to evaluate Miller's ineffective assistance claim, this court granted Miller's motion for remand to make such findings, *see generally* Utah R.App. P. 23B. We instructed the district court "to conduct hearings and

take evidence as necessary to enter findings of fact necessary to determine," among other things, whether Miller's trial counsel performed deficiently in failing to present the testimony of additional alibi witnesses and, if so, whether any prejudice resulted therefrom. After a hearing, the district court determined that Miller's trial counsel did not act deficiently in failing to call other alibi witnesses, most notably because Miller had "failed to provide [his trial counsel] with information to locate th[ese] witness[es]." The district court further determined "that even if the alleged deficiencies are assumed arguendo, [Miller] was not prejudiced .... [because] there is no reasonable probability of a different outcome at trial even if [these alibi witnesses] had testified." After making these findings, the district court returned the case to this court.

¶ 4 We then scheduled oral argument on Miller's appeal for late January 2007. Shortly before argument, however, the parties filed a stipulated motion for summary reversal of Miller's conviction because "they agreed that there was an error in the trial proceedings and that the interests of justice dictate[d] that [Miller] receive a new trial." We granted the parties' motion, dismissed Miller's appeal, and remanded for a new trial. Thus, there was no appellate review of the trial court's rule 23B findings regarding ineffectiveness of Miller's trial counsel. After reviewing the case file in preparation for Miller's retrial, the prosecutor determined that it would not again bring Miller to trial and filed a motion to dismiss the charges against Miller. Miller was released from custody on July 6, 2007—nearly four and one-half years after his initial arrest.

¶ 5 Miller then filed a civil petition against the State of Utah to determine his factual innocence pursuant to the "Postconviction Determination of Factual Innocence" statute (the Factual Innocence Statute). *See* Utah

---

**2.** This Amended Opinion replaces our Opinion issued on November 19, 2009, see *Miller v. State,* 2009 UT App 341, 643 Utah Adv. Rep. 15. We delete footnote five from our Opinion as requested in the State's unopposed Petition for Rehearing. *See* Utah R.App. P. 35(c) ("If a petition for rehearing is granted, the court may make a final disposition of the cause without reargument, or

may restore it to the calendar for reargument or resubmission, or may make such other orders as are deemed appropriate under the circumstances of the particular case."). Aside from this explanatory footnote and our redesignation of Judges Bench and Greenwood as Senior Judges, *see infra* n. 2, our opinion resolving this appeal remains exactly the same.

Code Ann. §§ 78B–9–401 to–405 (2008 & Supp.2009).[3] The State opposed this petition and filed a motion to dismiss, arguing that Miller "fails to state a claim upon which relief can be granted, or is otherwise not entitled to relief on any of the grounds alleged in the petition." *See* Utah R. Civ. P. 12(b)(6). More specifically, the State argued that Miller's petition did not allege facts sufficient to meet the statutory requirements for receiving a factual innocence hearing, particularly because the petition failed to identify newly discovered evidence or evidence that was not cumulative of evidence presented at trial; the combination of evidence supporting the petition does not lead to a determination of Miller's factual innocence; and Miller's trial counsel was not ineffective. *See* Utah Code Ann. § 78B–9–402(2)(a)(i)–(vi) (Supp.2009). Miller, on the other hand, argued that the State's motion to dismiss was improper and that his petition for a hearing was appropriate "by virtue of his alibi defense[ ] and the high degree of certainty that he was not present at the time and place the offense was committed." Miller further noted that several of the potentially problematic statutory requirements could be waived "in the interest of justice." *See id.* § 78B–9–402(2)(a)(vi)(C). In the alternative, Miller suggested that the facts "taken as a whole show[ ] factual innocence, and no other finding is necessary." The trial court determined that Miller's petition was subject to and failed to satisfy the statutory requirements contained in section 78B–9–402(2)(a). *See id.* § 78B–9–402(2)(a). The trial court therefore concluded that Miller had not successfully shown his entitlement to a hearing regarding his factual innocence and, accordingly, granted the State's motion to dismiss. Miller appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 6 The sole issue raised on appeal is whether the trial court erred in granting the State's motion to dismiss pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure. Whether a trial court properly granted a rule 12(b)(6) motion to dismiss "is a question of law that we review for correctness, affording the trial court's decision no deference." *Williams v. Bench,* 2008 UT App 306, ¶ 6, 193 P.3d 640.

## ANALYSIS

### I. The Factual Innocence Statute

¶ 7 In 2008, the Utah Legislature enacted the Factual Innocence Statute, the core purpose of which is to provide justice, in the form of monetary compensation, for individuals who have been found factually innocent of a crime for which they were previously convicted and incarcerated. As explained by the statute's sponsor, Senator Greg Bell, during debate on the floor of the Utah State Senate, the Factual Innocence Statute was enacted out of "concern for those who might be trampled upon in the grinding process of the law, which happens," and to "compensat[e] folks who have been dealt a very heavy and unjust blow." Recording of Utah Senate Floor Debates, 58th Leg., Gen. Sess. (Jan. 23, 2008) (statement of Sen. Bell on Senate Bill 016), *available at* http://le.utah.gov/asp/audio/index.asp. This compensation, however, is intended to apply only to "a fractional number of cases" where the petitioner has been "found . . . not technically, but factually innocent of a charge." *Id.* (Jan. 22, 2008). And in an effort to "protect[ ] [Utah] against lawsuits and . . . some claims that could be multi-million dollar claims," *id.,* the Factual Innocence Statute limits compensation to "the monetary equivalent of the average annual nonagricultural payroll wage in Utah" for "a maximum of 15 years," Utah Code Ann. § 78B–9–405(1)(a) (2008). To this end, the Factual Innocence Statute establishes a two-step claim process: an individual must first petition the court for a hearing to determine factual innocence, *see id.* § 78B–9–402(2) (Supp.2009), and if the petition meets

---

3. Miller's petition was actually based on an earlier version of this statute. Since enactment of the Factual Innocence Statute, the Utah Code has been recodified and renumbered. The Factual Innocence Statute is now contained in Utah Code sections 78B–9–401 through –405. *See* Utah Code Ann. §§ 78B–9–401 to –405 (2008 & Supp.2009). Because there is no substantive difference between the original and recodified versions of the Factual Innocence Statute, we cite to the current version for the reader's convenience.

the requirements of section 78B–9–402, a hearing will be held at which the petitioner bears the burden of proving factual innocence by clear and convincing evidence, *see id.* § 78B–9–402(6)(b)(i); *id.* § 78B–9–404 (2008). In the event the petitioner is found to be factually innocent, the Factual Innocence Statute awards the petitioner an assistance payment "for each year or portion of a year the petitioner was incarcerated, up to a maximum of 15 years," *id.* § 78B–9–405(1)(a), "an order of expungement of the petitioner's [relevant] criminal record," *id.* § 78B–9–405(6)(a), and a letter explaining "that the petitioner did not commit the crime or crimes for which the petitioner was convicted and was later found to be factually innocent," *id.* § 78B–9–405(6)(b).

¶ 8 Pertinent to this appeal, section 78B–9–402 of the Factual Innocence Statute states:

As used in this part:

(1) "Factually innocent" means a person did not:

(a) engage in the conduct for which the person was convicted;

(b) engage in conduct relating to any lesser included offenses; or

(c) commit any other felony arising out of or reasonably connected to the facts supporting the indictment or information upon which the person was convicted.

(2) (a) *A person who has been convicted of a felony offense may petition the district court* in the county in which the person was convicted for a hearing to establish that the person is factually innocent of the crime or crimes of which the person was convicted, if the person asserts factual innocence under oath and the petition alleges:

(i) newly discovered material evidence exists that establishes that the petitioner is factually innocent;

(ii) the petitioner identifies the specific evidence the petitioner claims establishes innocence;

(iii) the material evidence is not merely cumulative of evidence that was known;

(iv) the material evidence is not merely impeachment evidence;

(v) viewed with all the other evidence, the newly discovered evidence demonstrates that the petitioner is factually innocent; and

(vi) (A) neither the petitioner nor petitioner's counsel knew of the evidence at the time of trial or sentencing or in time to include the evidence in any previously filed post-trial motion or postconviction motion, and the evidence could not have been discovered by the petitioner or the petitioner's counsel through the exercise of reasonable diligence;

(B) a court has found ineffective assistance of counsel for failing to exercise reasonable diligence in uncovering the evidence; or

(C) the court waives the requirements of Subsection (2)(a)(vi)(A) or (2)(a)(vi)(B) in the interest of justice.

(b) *A person who has already obtained postconviction relief that vacated or reversed the person's conviction may also file a petition under this part if no retrial or appeal regarding this offense is pending.*

. . . .

(6). . . .

(b) (i) After the time for response by the attorney general under Subsection (6)(a) has passed, *the court shall order a hearing if it finds there is a bona fide issue as to whether the petitioner is factually innocent of the charges of which the petitioner was convicted.*

(ii) If the parties stipulate that the evidence establishes that the petitioner is factually innocent, the court may find the petitioner is factually innocent without holding a hearing.

*Id.* § 78B–9–402(1) to (2)(b), (6)(b) (Supp. 2009) (emphases added).

¶ 9 The State argues that the trial court was correct in determining that Miller's petition did not satisfy the requirements of section 78B–9–402(2)(a) (subsection (2)(a)) for various reasons, including, among other deficiencies, that it did not allege newly dis-

covered material evidence, *see id.* § 78B–9–402(2)(a)(i), and that the evidence it did offer was merely cumulative of the evidence presented at Miller's trial, *see id.* § 78B–9–402(2)(a)(iii). The State also points to the rule 23B remand hearing, wherein the trial court determined that Miller's trial counsel was not ineffective, and contends that this determination is binding on Miller, effectively preventing his petition from satisfying the specific requirement contained in section 78B–9–402(2)(a)(vi). *See id.* § 78B–9–402(2)(a)(vi).

¶ 10 The Rocky Mountain Innocence Center, as Amicus Curiae, argues that Miller's petition satisfies the requirements of subsection (2)(a) because it presents new alibi testimony that was not merely cumulative of the testimony at trial, asserting further that the rule 23B determination is not binding with respect to Miller's petition and therefore does not negate the possibility of innocence.[4] Amicus Curiae also argues that Miller's petition should be granted "in the interest of justice" as provided in section 78B–9–402(2)(a)(vi)(C). *See id.* § 78B–9–402(2)(a)(vi)(C). In addition, Amicus Curiae points out that the Factual Innocence Statute sets a very low bar for a petitioner to receive a factual innocence hearing. *See id.* § 78B–9–402(6)(b)(i) (stating that a hearing is required if the court "finds there is a bona fide issue as to ... factual innocen[ce]").

¶ 11 Miller posits a third position: that subsection (2)(a) is inapplicable to him and, instead, that he is subject to the requirements of section 78B–9–402(2)(b) (subsection (2)(b)) because his conviction has been reversed and no retrial or appeal is pending. *See id.* § 78B–9–402(2)(b). Largely because of principles of statutory construction, we agree with Miller.

¶ 12 Our primary goal in construing statutory language is to give effect to "the true intent and purpose of the Legislature," and the best tool for doing so is generally the plain language of the statute itself. *State v. Martinez,* 2002 UT 80, ¶ 8, 52 P.3d 1276 (internal quotation marks omitted). "Where the ordinary meaning of the [statutory] terms results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction to the express purpose of the statute, it is not [our] duty ... to assess the wisdom of the statutory scheme." *West Jordan v. Morrison,* 656 P.2d 445, 446 (Utah 1982). However, where a literal reading of the plain language at issue "creates an absurd, unreasonable, or inoperable result, we assume the legislature did not intend that result .... [and] endeavor to discover the underlying legislative intent and interpret the statute accordingly." *State v. Jeffries,* 2009 UT 57, ¶ 8, 217 P.3d 265. In fact, "[o]ne of the cardinal principles of statutory construction is that [we] will look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject." *In re Marriage of Gonzalez,* 2000 UT 28, ¶ 23, 1 P.3d 1074 (internal quotation marks omitted). Further, when evaluating the language at issue "we assume the legislature used each term advisedly and in accordance with its ordinary meaning." *Martinez,* 2002 UT 80, ¶ 8, 52 P.3d 1276.

¶ 13 The State cites subsection (2)(a) and argues that, by its plain language, there are no "exceptions or special rules for petitioners whose convictions were reversed on appeal [and] whose cases were ... [not] retried." However, this argument ignores the presence of subsection (2)(b), which specifically addresses just such a petitioner and does not impose upon him or her any of the requirements for a petition filed under subsection (2)(a). *Compare* Utah Code Ann. § 78B–9–402(2)(b) (Supp.2009), *with id.* § 78B–9–402(2)(a). It would have been easy for the Legislature to have included such language, and thus we presume the Legislature intentionally omitted those requirements from subsection (2)(b). Furthermore, as noted by

---

4. We note that the rule 23B remand hearing did not divest this court of appellate jurisdiction because it was only a "temporar[]y remand[]," *see* Utah R.App. P. 23B(c), and, despite the trial court's finding that there was not ineffective assistance of counsel, this court could have disagreed with that assessment as clearly erroneous, *see, e.g., State v. Barber,* 2009 UT App 91, ¶ 65, 206 P.3d 1223 (concluding that trial court erred in finding on rule 23B remand that counsel was not ineffective, but further determining that "the deficiency was not prejudicial").

counsel for Amicus Curiae at oral argument, interpreting the Factual Innocence Statute according to the State's "literal" reading of section 78B–9–402 would lead to an absurd result. For example, under the State's reading, a defendant who, after his conviction, had discovered new evidence sufficient to overturn his conviction through the postconviction process would still be subject to the requirements of subsection (2)(a). Under subsection (2)(a), however, the same hypothetical petitioner would be subsequently barred from using the same newly discovered and potentially exonerating evidence that had helped to reverse his conviction in attempting to receive a factual innocence hearing because that evidence was known "in time to include [it] in a[ ] previously filed … postconviction motion." *Id.* § 78B–9–402(2)(a)(vi)(A). Because the State's reading would lead to an illogical and unreasonable result, we conclude that it cannot be what the Legislature intended. *See Jeffries,* 2009 UT 57, ¶ 8, 217 P.3d 265.

■■■ ¶ 14 Instead, the plain language of section 78B–9–402 convinces us that a petition filed under subsection (2)(b) is not subject to the same requirements as a petition filed under subsection (2)(a), because subsection (2)(b) states simply that a petitioner whose conviction has been reversed or vacated and is not facing retrial or appeal "may also file a petition under this *part.*" Utah Code Ann. § 78B–9–402(2)(b) (emphasis added). "Part," as used in subsection (2)(b), is a term of statutory organization and applies to Part 4 of the Postconviction Remedies Act, or what this opinion refers to as the Factual Innocence Statute. Thus, the plain language of section 78B–9–402 establishes two tracks for obtaining a factual innocence hearing:

one applicable to any "person who has been convicted of a felony offense," *id.* § 78B–9–402(2)(a), and another for any person who has secured reversal or vacatur of his or her felony conviction and is not facing retrial or appeal for that offense, *see id.* § 78B–9–402(2)(b). We believe this reading more adequately recognizes and respects the significantly different procedural postures of a petitioner whose conviction remains in force and one who, like Miller, has secured reversal and will be pursued no further.

■■■ ¶ 15 Regardless of the differences in evidence required, however, we conclude that a petition filed under either subsection (2)(a) or subsection (2)(b) must meet the same burden in order to merit a factual innocence hearing: the petition must evidence "a bona fide issue as to whether the petitioner is factually innocent." *Id.* § 78B–9–402(6)(b)(i). This threshold requirement lends further support to our interpretation of the Factual Innocence Statute as requiring different evidentiary showings depending on the status of the petitioner's conviction. A petitioner who has yet to overturn his or her conviction must present very specific evidence to show a bona fide issue of factual innocence sufficient to even consider disturbing the otherwise final determination of the convicting court. In contrast, depending on the reasons therefore, a bona fide issue as to factual innocence may exist any time a felony conviction is reversed and not retried.[5] Accordingly, we hold that the plain language of section 78B–9–402 allows a petitioner in Miller's position to receive a factual innocence hearing if his or her petition evidences a bona fide issue as to factual innocence, without a requirement that the petition meet the statutory require-

---

5. We are mindful that just because a conviction has been overturned and "the prisoner has been released from jail does not establish the right to [compensation] under th[e Factual Innocence Statute]." Recording of Utah Senate Floor Debates, 58th Leg., Gen. Sess. (Jan. 22, 2008) (statement of Sen. Bell on Senate Bill 016), *available at* http://le.utah.gov/asp/audio/index.asp. A conviction may be reversed or vacated for procedural errors and not result in a new trial for any number of reasons, such as unavailability of witnesses. Such a situation does not necessarily indicate factual innocence. Nevertheless, the

plain language of section 78B–9–402 states that all such persons who can show a bona fide issue as to their innocence are entitled to a factual innocence hearing. *See* Utah Code Ann. § 78B–9–402(2)(b), (6)(b)(i) (Supp.2009). We believe this reading accurately reflects the Legislature's "concern for those who might be trampled upon in the grinding process of the law." Recording of Utah Senate Floor Debates, 58th Leg., Gen. Sess. (Jan. 23, 2008) (statement of Sen. Bell on Senate Bill 016), *available at* http://le.utah.gov/asp/audio/index.asp.

ments of subsection (2)(a).[6]

## II. The Rule 12(b)(6) Motion

¶ 16 Having interpreted the Factual Innocence Statute, we now address whether the trial court erred in granting the State's rule 12(b)(6) motion to dismiss. Rule 12(b)(6) allows a respondent to move for dismissal of any petition which the respondent believes "fail[s] to state a claim upon which relief can be granted." Utah R. Civ. P. 12(b)(6). Accordingly, "[a] rule 12(b)(6) motion to dismiss admits the facts alleged in the [petition] but challenges the [petitioner]'s right to relief based on those facts." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991). Thus, when reviewing the correctness of a trial court's grant of such a motion "we accept the factual allegations in the [petition] as true and consider them and all reasonable inferences to be drawn from them in a light most favorable to the [petitioner]." *Id.*

¶ 17 Miller's petition recounts the above-stated procedural history of his criminal case—including that the events leading to the underlying charges against him occurred on December 8, 2000–and, relevant to our present analysis, alleges the following:

5. ... During the remand [following summary reversal of Miller's conviction], additional testimony as to an alibi defense was obtained, which had not been available at the original trial.

. . . .

8. [Miller] was admitted to [a hospital in Louisiana] in the early morning hours of November 25, 2000 .... [after] having a "cerebrovascular accident" (a stroke). He was released to his sister on November 28, 2000 and provided with a ... home health care nurse.

9. At the time, [Miller] was employed [in Louisiana]. His employment records show that he was absent from work for medical reasons from November 25 through December 13, 2000.

10. In [his direct appeal, Miller] filed an affidavit of ... a registered nurse ... assigned to provide [home health] care to Miller. That affidavit stated that [the nurse] had visited Mr. Miller in [Louisiana] on December 7, 2000 and again on December 14, 2000. An assessment produced by the nurse on December 14, 2000, included the statement: "Able to ride in a car only when driven by another person OR able to use a bus or handicap van only when assisted or accompanied by another person."

Accepting all these allegations as true and "consider[ing] them and all reasonable inferences to be drawn from them in a light most favorable to [Miller]," *see id.*, we now address whether Miller's petition meets the statutory requirements to defeat the rule 12(b)(6) motion, entitling him to a factual innocence hearing.

¶ 18 As already determined, because Miller has secured postconviction relief reversing his conviction and no retrial or appeal is pending related to the offense for which Miller was convicted, Miller's petition was filed under subsection (2)(b) and is not constrained by the requirements of subsection (2)(a). Thus, Miller's petition must only raise a justiciable bona fide issue of factual innocence in order to receive a factual innocence hearing. *See id.* § 78B–9–402(6)(b)(i) (Supp.2009). We conclude that Miller's petition succeeds in presenting such an issue, especially because Miller's commission of the underlying offense, although not impossible, is highly debatable because of both physical and temporal limitations. Most notably, Miller's stroke limited his physical mobility such that he could get around only with assistance, and testimony indicates Miller had only slightly more than twenty-four hours to fly from his recovery bed in Louisiana to Utah in order to commit an act of physical violence against a complete stranger. These facts together with the reasonable inferences drawn therefrom, viewed in a light most favorable to Miller, *see St. Benedict's Dev. Co.*, 811 P.2d at 196, raise a bona fide issue as to Miller's factual innocence.[7] Having deter-

---

**6.** "If [our] interpretation brings about a result contrary to the intention of the Legislature, it is a matter for the Legislature to remedy. [We] may

not do so." *West Jordan v. Morrison*, 656 P.2d 445, 447 (Utah 1982).

**7.** We note that Miller still faces a heavy burden of proof at the factual innocence hearing, *see*

mined that Miller's petition satisfies the requirements of the Factual Innocence Statute, we reverse the trial court's grant of the State's rule 12(b)(6) motion to dismiss and remand so that Miller may receive the factual innocence hearing to which he is statutorily entitled.

## CONCLUSION

¶ 19 We determine that the plain language of section 78B–9–402 entitles a petitioner such as Miller who has secured reversal or vacatur of his conviction and who is facing no further prosecution for that offense to file a petition under subsection (2)(b), which petition is not constrained by the statutory requirements of subsection (2)(a). Consequently, we further conclude that Miller is entitled to a hearing to determine factual innocence because his petition evidences a bona fide issue as to factual innocence. We therefore reverse and remand.

¶ 20 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and RUSSELL W. BENCH, Senior Judge.

Utah Code Ann. § 78B–9–404(1)(b) (2008), and our decision expresses no opinion as to whether Miller will be able to meet that burden; rather, we hold simply that he must be given an opportunity to do so.