2014 UT App 254

# THE UTAH COURT OF APPEALS

KORTE H. WAMSLEY JR.,
Plaintiff and Appellant,

*v.*

STATE OF UTAH,
Defendant and Appellee.

Opinion
No. 20121006-CA
Filed October 23, 2014

Third District Court, West Jordan Department
The Honorable Charlene Barlow
No. 120409899

Korte H. Wamsley Jr., Appellant Pro Se

Sean D. Reyes and Brett J. DelPorto, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE JOHN A. PEARCE and SENIOR JUDGE RUSSELL W. BENCH concurred.[1]

ROTH, Judge:

¶ 1     Korte H. Wamsley Jr. entered *Alford* pleas to two counts of sexual abuse of a child involving two of his daughters. Five years later, Wamsley filed a petition for postconviction relief

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

alleging that he was factually innocent. Wamsley submitted with the petition an affidavit from the younger daughter, stating that her father had never touched her inappropriately. The district court granted the State's subsequent motion to dismiss the petition, finding that the affidavit was "not . . . credible." Wamsley appeals, arguing that the court inappropriately weighed the evidence and denied his request for an evidentiary hearing. We affirm.

## BACKGROUND

¶ 2    In 2005, the State charged Wamsley with six first degree felony counts of aggravated sexual abuse of a child. Wamsley's older daughter (Older Daughter) had told investigators that he began abusing her in August 2004 and continued until the early months of 2005. Wamsley's younger daughter (Younger Daughter) also came forward and told police that her father had touched her inappropriately sometime around May 2005. According to Younger Daughter, Wamsley came into her bedroom at night and told her he needed to check her for something. He instructed Younger Daughter to take off her pants and underwear, lie on her stomach, and open her legs. He then placed his hands on Younger Daughter's thighs and spread her legs, causing her pain. He stopped and left the room when he heard somebody open the front door to their home.

¶ 3    Wamsley eventually entered *Alford* guilty pleas[2] to two second degree felony counts of sexual abuse of a child, one for

---

2. "By entering an *Alford* plea, a defendant does not admit guilt. Rather, the defendant enters a guilty plea because he recognizes that a prosecutor has enough evidence to obtain a guilty verdict." *State v. Ott*, 2010 UT 1, ¶ 9 n.2, 247 P.3d 344; *see also North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970).

each daughter.[3] The court sentenced Wamsley to two indeterminate prison terms of one to fifteen years, then suspended the prison terms and placed Wamsley on probation for seventy-two months. The court prohibited Wamsley from having any contact with Older Daughter and Younger Daughter.

¶ 4    Wamsley filed a petition for postconviction relief in 2012, alleging that he was "factually innocent of the crimes for which he was convicted and sentenced." The only evidence submitted with the petition was the affidavit of Younger Daughter. According to the affidavit, Younger Daughter had turned eighteen and wanted to reestablish a relationship with her father. She asked the court to remove the no-contact order, stating that she "want[s her] father . . . to be[ ]able to see [her] and want[s] all charges/convictions concerning him reversed." The substantive focus of her affidavit is paragraph 3, where she states, "I . . . repeatedly have declared that my father . . . has never touched me inappropriately or in any of my private areas. Also I never wanted charges filed against my father nor did I participate in filing charges against him."

¶ 5    The State moved to dismiss the petition, arguing that "because [Wamsley's conviction] . . . is based upon his plea of guilty . . . , and [his petition] relies solely upon the recantation of prior statements and sworn testimony made by [Younger Daughter], the petition should be dismissed." *See* Utah Code

---

3. The State "question[s] whether [Younger Daughter's] affidavit has any relevance to [Wamsley's] claim of factual innocence" because "under the most reasonable interpretation of the Third Information and the Plea Statement, Wamsley pleaded guilty to two counts of abusing [Older Daughter]." We have carefully reviewed the record and find the State's argument unpersuasive.

Ann. § 78B-9-402(4) (LexisNexis Supp. 2013)[4] (providing that the court "may dismiss the petition at any time . . . if the court finds that the evidence of factual innocence relies solely upon the recantation of testimony or prior statements made by a witness against the petitioner, and the recantation appears to the court to be equivocal or selfserving"). With the motion, the State submitted affidavits from Older Daughter and the girls' mother (Mother) reaffirming their prior statements to investigators that Wamsley sexually abused his daughters. In addition, Older Daughter stated in her affidavit that she heard Younger Daughter tell her grandmother and Mother that Wamsley sexually abused Younger Daughter and that Younger Daughter had disclosed the abuse to her as well. Mother also stated that both of her daughters told her "that they were, each, sexually abused by their father."

¶ 6    In response, Wamsley attacked the credibility of Older Daughter and Mother, submitting more than sixty pages of documents that he argued showed that Older Daughter's affidavit "contains untrue statements" and that Mother's "declaration [is] untrue." The court granted the State's motion and dismissed Wamsley's petition. The court did "not find [Younger Daughter's] affidavit to be credible given [her] prior testimony" and the statements in Older Daughter's and Mother's affidavits. As a result, the court concluded, quoting section 78B-9-402(9)(c) of the Utah Code, that Wamsley had "not presented

---

4. Because the provisions in effect at the relevant time do not differ from the statutory provisions now in effect in any way material to our analysis, we cite to the current edition of the Utah Code Annotated as a convenience to the reader.

credible evidence that would establish a 'bona fide and compelling issue of factual innocence.'"[5] Wamsley appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 7    Wamsley raises a number of arguments that all relate to a single issue—whether the district court erred when it granted the State's rule 12(b)(6) motion to dismiss his petition for postconviction relief. "Whether a [district] court properly granted a rule 12(b)(6) motion to dismiss 'is a question of law that we review for correctness, affording the [district] court's decision no deference.'" *Miller v. State*, 2010 UT App 25, ¶ 6, 226 P.3d 743 (quoting *Williams v. Bench*, 2008 UT App 306, ¶ 6, 193 P.3d 640).

## ANALYSIS

¶ 8    Wamsley argues that the "allegations" in his petition "show that [Wamsley] is highly unlikely to have committed the crime with which he was charged." Consequently, he contends, the petition demonstrated a bona fide issue of factual innocence and the district court "should have held an evidentiary hearing" before dismissing the petition. Wamsley also argues that the court improperly weighed the evidence and failed to view the facts "in a light most favorable to him, not the State." Although we agree with Wamsley that the court appears to have weighed the evidence, we conclude that the court's decision to dismiss the petition without holding a hearing was not improper because the petition is based solely on Younger Daughter's equivocal affidavit and because Wamsley failed to establish a "compelling

---

5. The court quoted the correct language from section 78B-9-402(9)(c), but its written decision inadvertently referenced section 78B-9-403(9)(c), a subsection that does not exist.

issue of factual innocence." *See* Utah Code Ann. § 78B-9-402(4) (LexisNexis Supp. 2013).

## I. The Equivocal Affidavit

¶ 9    Section 78B-9-402 of the Utah Code ("The Factual Innocence Statute") permits anyone "who has been convicted of a felony offense" to "petition the district court . . . for a hearing that the person is factually innocent of the crime or crimes of which the person was convicted." *Id.* § 78B-9-402(1). "'Factual innocence'" means that the petitioner did not "engage in the conduct for which the petitioner was convicted," "engage in conduct relating to any lesser included offenses," or "commit any other felony arising out of or reasonably connected to the facts supporting the indictment or information" underlying the conviction. *Id.* § 78B-9-401.5(2) (LexisNexis 2012). Once a petition is filed, the court conducts an initial review to determine that the allegations in the petition are not "merely relitigating facts, issues, or evidence presented in previous proceedings or presenting issues that appear frivolous or speculative on their face." *Id.* § 78B-9-402(9)(b) (LexisNexis 2013). The petition must also meet the requirements of subsection 2(a), which requires that the petition include the following allegations supported by "affidavits or other credible documents":

> (i) newly discovered material evidence exists that, if credible, establishes that the petitioner is factually innocent;
> (ii) *the specific evidence identified by the petitioner in the petition establishes innocence*;
> (iii) the material evidence is not merely cumulative of evidence that was known;
> (iv) *the material evidence is not merely impeachment evidence*; and
> (v) viewed with all of the other evidence, the newly discovered evidence demonstrates that the petitioner is factually innocent.

*Id.* § 78B-9-402(2)(a) (emphases added). Additionally, subsection (3)(a) provides that the petition must allege that neither the petitioner nor the petitioner's attorney "knew of the evidence at the time of trial or sentencing or in time" to bring it to the court's attention in any prior postconviction proceeding and that "the evidence could not have been discovered" earlier "through the exercise of reasonable diligence."[6] *Id.* § 78B-9-402(3)(a)(i).

¶ 10    The "court shall dismiss the petition" if it decides the petition does not meet these threshold requirements, but if the court decides not to dismiss the petition, "it shall order the attorney general to file a response to the petition." *Id.* § 78B-9-402(9)(b). "After the time for response by the attorney general . . . has passed, the court shall order a hearing if it finds the petition meets the requirements of Subsections (2) and (3) and finds there is a bona fide and compelling issue of factual innocence . . . ." *Id.* § 78B-9-402(9)(c). "No bona fide and compelling issue of factual innocence exists if . . . the petitioner is unable to identify with sufficient specificity the nature and reliability of the newly discovered evidence that establishes the petitioner's factual innocence." *Id.*

---

6. The statute is not clear as to whether the requirements of subsection (3)(a) should be a part of a court's initial determination. *See* Utah Code Ann. § 78B-9-402(3)(b) (LexisNexis Supp. 2013). Subsection (3)(b) states that, "[u]pon entry of a finding that the petition is sufficient under Subsection (2)(a), the court shall then review the petition to determine if Subsection (3)(a) has been satisfied." *Id.* But subsection (3)(b) does not specify whether the subsection (2)(a) sufficiency determination it refers to also includes the initial determination mandated to occur in conjunction with subsection (9)(b) or only the sufficiency determination required by subsection (9)(c) after the attorney general responds, or both. For reasons discussed below, *infra* ¶¶ 20–23, this question need not be resolved in order to complete our analysis of the issues on appeal.

¶ 11   Here, the court made an initial determination that Wamsley's petition was "sufficient to meet the requirements of subsections (2)(a) and (3)(a)" and ordered the "attorney general . . . to file a response." The State moved to dismiss the petition under rule 12(b)(6) of the Utah Rules of Civil Procedure, arguing that Wamsley had "failed to satisfy the threshold requirements of the factual innocence statute." The court ultimately dismissed Wamsley's petition because it did not find Younger Daughter's affidavit to be credible. Wamsley points out that in the context of a rule 12(b)(6) motion to dismiss, the court must ordinarily "accept the factual allegations in the [petition] as true and consider them and all reasonable inferences to be drawn from them in a light most favorable to the [petitioner]." *Miller*, 2010 UT App 25, ¶ 16 (alterations in original) (citation and internal quotation marks omitted). Consequently, he argues, the court inappropriately weighed the evidence when deciding whether to dismiss his petition.

¶ 12   Wamsley's argument, however, overlooks a provision of the Factual Innocence Statute that seems to impose a different standard from rule 12(b)(6) for the district court's assessment of the adequacy of the petition where the conviction stems from a guilty plea and the evidence of factual innocence depends on a witness's recantation. The rules of civil procedure may be preempted "by other rules promulgated" by the Utah Supreme Court or "statutes enacted by the Legislature." Utah R. Civ. P. 1; *see also id.* R. 81(a) (noting that the rules of civil procedure "apply to all special statutory proceedings, except insofar as such rules are by their nature clearly inapplicable"). And the Factual Innocence Statute outlines a narrow class of cases where courts are not required to view a particular category of facts submitted in support of a petition for postconviction relief in a light most favorable to the petitioner. Specifically, subsection (4) provides that if the defendant's conviction "was based upon a plea of guilty" and the petition "relies solely upon the recantation of testimony or prior statements made by a witness against the petitioner," the court "may dismiss the petition *at any time* . . . if the court finds" that "the recantation appears . . . to be equivocal

or selfserving." Utah Code Ann. § 78B-9-402(4) (emphasis added).

¶ 13  Requiring a recantation to be unequivocal and not selfserving seems to require a different approach from rule 12(b)(6), which requires that the factual allegations be accepted as true and that any inferences be viewed in the light most favorable to the petitioner. Instead, determining whether or not an affidavit is "equivocal" under subsection (4) implicitly involves examining the affidavit's contents for internal consistency and even comparing it with other evidence in the record, particularly any prior statements the affiant may have made that the affidavit purports to recant. And with regard to the "selfserving" inquiry, the court may even consider whether ulterior motives may have colored the affiant's testimony. In other words, the statute allows district courts to conduct a probing review that is qualitatively different from simply accepting "the factual allegations . . . as true" and drawing "all reasonable inferences . . . in a light most favorable to the [petitioner]." *Miller v. State*, 2010 UT App 25, ¶ 16, 226 P.3d 743 (alteration in original) (citation and internal quotation marks omitted). As a consequence, the petitioner loses the benefit of the doubt ordinarily available in connection with a motion to dismiss if the purported recantation is equivocal, or, in other words, susceptible to more than one interpretation.

¶ 14  Here, Wamsley's convictions were based on guilty pleas to two counts of sexual abuse of a child. The first charge was based on Older Daughter's allegations that Wamsley abused her when Mother was out of town. The second charge related to Younger Daughter's statement to police that her father told her to take off her underwear so he could check her for something, had put his hands on her thighs, had spread her legs until it hurt, and had left the room when he heard someone walk in the front door of the family's home. Wamsley's petition requested that the court "find him factually innocent of the [child sexual abuse] crimes for which he was convicted and sentenced." In support, he attached only Younger Daughter's affidavit and

argued that it "provides substantial, compelling evidence" that Wamsley "is factually innocent of the charges for which he was convicted." In the affidavit, Younger Daughter stated that "I . . . repeatedly have declared that my father . . . has never touched me inappropriately or in any of my private areas" and that "I never wanted charges filed against my father nor did I participate in filing charges against him." Wamsley's convictions were based on guilty pleas, and his petition relied entirely upon Younger Daughter's "recantation of . . . prior statements" she had made that served as the basis for one of the charges against him.[7] *See* Utah Code Ann. § 78B-9-402(4) (LexisNexis Supp. 2013). Consequently, the court could dismiss the petition "at any time" under subsection (4) if it found Younger Daughter's recantation "equivocal or selfserving." *See id.*

¶ 15   The court dismissed Wamsley's petition, noting that Wamsley "pled guilty to two counts of sexual abuse of a child" and that, "consequently, his petition must be analyzed under subsection (4)" of the Factual Innocence Statute. After observing that the petition "relies solely upon [Younger Daughter's] affidavit," which "purports to recant [Younger Daughter's] sworn testimony," the court found that the affidavit was "not . . . credible" and concluded that Wamsley had failed to "establish a bona fide and compelling issue of factual innocence." (Citation and internal quotation marks omitted.) Although the court did not use the word "equivocal" to characterize Younger Daughter's affidavit, its reference to subsection (4) in the context of Wamsley's guilty pleas and the court's observation that the petition "relies solely" on an affidavit that "recant[s] . . . sworn testimony" demonstrates that it considered subsection (4) as a

---

7. Wamsley does not dispute that his petition is based "solely" on Younger Daughter's affidavit. *See* Utah Code Ann. § 78B-9-402(4). We address the court's dismissal of Wamsley's petition as it relates to the count involving his conduct against Older Daughter later in this decision. *See infra* ¶ 24.

basis for dismissal of the petition. *See* Utah Code Ann. § 78B-9-402(4). And we conclude that dismissal under subsection (4) was appropriate without an evidentiary hearing because Younger Daughter's affidavit was equivocal.[8]

¶ 16    The statute does not set forth any specific standard to determine whether or not a "recantation" is "equivocal," *see id.*, and there does not appear to be any case law interpreting the language of subsection (4). To interpret the statute, we therefore look to the "ordinary meaning" that the pertinent terms "would have to a reasonable person familiar with the usage and context of the language in question." *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 9, 248 P.3d 465; *see also Dillon v. Southern Mgmt. Corp. Ret. Trust*, 2014 UT 14, ¶ 50, 326 P.3d 656 ("When interpreting a statute, we look to the plain language first, recognizing that our primary goal is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve." (citation and internal quotation marks omitted)). "The starting point to discerning such meaning is the dictionary," which contains a "useful . . . cataloging . . . of possible meanings that a statutory term may bear." *Hi-Country Prop. Rights Group v. Emmer*, 2013 UT 33, ¶ 19, 304 P.3d 851. According to Black's Law Dictionary, a statement is equivocal if it is "[o]f doubtful character," appears "questionable," has "more than one meaning or sense," or is "ambiguous." *Black's Law Dictionary* 621 (9th ed. 2009); *see also* Merriam-Webster.com, http://www.merriam-webster.com/dictionary/equivocal (last visited Sept. 8, 2014) (defining "equivocal" as "subject to two or more interpretations and usually used to mislead or confuse").

---

8. Even if the district court did not intend to dismiss the petition under subsection (4), we would still affirm its decision on that basis. *See Madsen v. Washington Mut. Bank, FSB*, 2008 UT 69, ¶ 26, 199 P.3d 898 ("When reviewing a decision made on one ground, we have the discretion to affirm the judgment on an alternative ground if it is apparent in the record." (emphasis omitted)).

¶ 17   After reviewing the pertinent aspects of the record and Wamsley's factual innocence petition, we conclude that Younger Daughter's affidavit is "ambiguous" in that it has "more than one meaning or sense" or "is subject to two or more interpretations" and is therefore "equivocal" under subsection (4), *see* Utah Code Ann. § 78B-9-402(4), particularly when read alongside what she told police in 2005. Nowhere in Younger Daughter's affidavit does she specifically deny that Wamsley engaged in the conduct that formed the basis for his prosecution and guilty plea for the charge that involved her as victim. The closest she gets to a recantation is her claim that "I . . . repeatedly have declared that my father . . . has never touched me inappropriately or in any of my private areas." She only states that Wamsley never did anything to her that was "inappropriate" and never touched her "private areas." But that is not necessarily inconsistent with her earlier statements describing Wamsley's actions.

¶ 18   First, it is not clear what the term "private areas" means to Younger Daughter. Even if we assume she means the specific parts of the body described in the child sexual abuse statute, such as the anus, buttocks, genitalia, or breasts, *see* Utah Code Ann. § 76-5-404.1 (LexisNexis Supp. 2013), that does not inevitably conflict with her 2005 description of Wamsley's conduct, which included touching of other body parts. As such, her affidavit statement that Wamsley never touched her "private areas" does not necessarily contradict her prior statements that he touched other parts of her body in the context of a very intrusive visual examination of her "private areas." Second, from the perspective of her present circumstances, she may now be unwilling to characterize Wamsley's conduct as "inappropriate[]." But her subjective belief about the propriety of Wamsley's treatment of her as a much younger child does not alter the specifics of what she described at the time, nor does it demonstrate that he is factually innocent of sexual abuse of a child. *See id.* (defining the offense of "sexual abuse of a child" to include touching a child's "anus, buttocks, or genitalia," or "the breast of a female child," or "tak[ing] indecent liberties with a

child"). Consequently, it is far from clear whether Younger Daughter's affidavit is meant to be a full and unambiguous recantation of the allegations underlying Wamsley's conviction or is, rather, a carefully worded attempt to now characterize his conduct as less damning in order to reflect her present view of him in the changed circumstances of their relationship.

¶ 19   Even if we were to read Younger Daughter's statement that "my father . . . has never touched me inappropriately or in any of my private areas" as an unambiguous denial of Wamsley's sexual abuse, the affidavit is still equivocal in other respects. Specifically, Younger Daughter never addresses the fact that the substance of her affidavit is entirely inconsistent with her prior statements, and her affidavit provides no basis to credit her present recantation over her preliminary hearing testimony or other prior statements she made describing the abuse. For instance, in a probable cause statement supporting the information, a detective stated that Younger Daughter told her how Wamsley abused her, and that description of Wamsley's conduct matches her testimony at the preliminary hearing. And according to her preliminary hearing testimony, she told Mother, her grandmother, and a family friend about the abuse. Further, Mother and Older Daughter have both stated in affidavits that Younger Daughter told them that Wamsley abused her. Younger Daughter's affidavit does not claim that her prior statements were untruthful or that she misled investigators and her family members. In fact, the affidavit entirely fails to acknowledge that she ever made any conflicting statements, and it does not attempt to explain why her prior testimony and statements ought to be entirely discounted in favor of the conflicting statements in her affidavit. Consequently, Younger Daughter's affidavit amounts to a kind of self-impeachment, calling into question the reliability of her own prior testimony and statements simply because she now says something apparently different. As such, her affidavit is not the unequivocal recantation that the statute requires, but at best is "merely impeachment evidence." *See* Utah Code Ann. § 78B-9-402(2)(a)(iv) (LexisNexis Supp. 2013) (providing that the

evidence supporting a petition for factual innocence cannot be "merely impeachment evidence").

## II. Other Deficiencies in the Petition

¶ 20 Wamsley nevertheless maintains that he is entitled to a hearing because the court already "determined that the Petition (and its supporting affidavit) met the requirements" of subsection (2)(a), "thereby determining that [Younger Daughter's] affidavit *was* credible." Wamsley's argument, however, is not consistent with the procedures outlined in the Factual Innocence Statute. The ruling that he references was only the court's initial determination that Wamsley's petition was plausible enough to warrant a response from the State—a determination that required the court to assess the validity of the petition under subsection (2)(a).[9] *See id.* § 78B-9-402(2), (9)(b). However, after the State has filed a response, the statute states that the court should then evaluate again whether the petition meets the requirements set forth in subsections (2) as well as those requirements listed in subsection (3) of the statute. *Id.* § 78B-9-402(9)(c). The court also looks to see if "a bona fide and compelling issue of factual innocence" exists in light of the State's response. *Id.* The court is under no obligation to hold a hearing on the petition if it determines those requirements are not met. Were we to accept Wamsley's reading of the statute, a petitioner would automatically receive a hearing every time the court ordered a response from the State, a result that is inconsistent with subsection (9)(c)'s directive that courts are implicitly required to reassess whether "the petition meets the requirements of Subsections (2) and (3)" "[a]fter the time for a response by the attorney general . . . has passed." *Id.*

---

9. And possibly subsection (3)(a), which the court did in this case. *See supra* ¶ 9 & note 7.

¶ 21　But even if Younger Daughter's affidavit was not equivocal and the court's initial determination that Wamsley's petition satisfied subsection (2)(a) could not be reexamined, Wamsley has still failed to demonstrate that there was a "compelling issue of factual innocence" warranting a hearing. *See id.* Under subsection (9)(c), "the court shall order a hearing if it finds that the petition meets the requirements of subsections (2) and (3) *and* finds there is a bona fide and compelling issue of factual innocence." *Id.* (emphasis added). The statute defines "[b]ona fide and compelling issue of factual innocence" as "newly discovered material evidence" that, "if credible, would clearly establish the factual innocence of the petitioner." *Id.* § 78B-9-401.5(1) (LexisNexis 2012).

¶ 22　The evidence before the district court does not meet that threshold. With respect to the charge involving Younger Daughter, Wamsley supported his initial petition with one affidavit denying "inappropriate[]" touching without explicitly disavowing either the abuse or the prior statements describing the abuse. Even assuming that all the facts alleged in the affidavit are true, the affidavit is so ambiguous that it does not "clearly establish [Wamsley's] factual innocence," *id.*, a conclusion that would have become more clear to the district court when the State submitted affidavits from Older Daughter and Mother, affirming that Older Daughter was abused and stating that Younger Daughter had acknowledged abuse in their presence. And the materials Wamsley later submitted with his response to the State's motion similarly fail to raise a compelling issue of factual innocence. Wamsley attached to his response a variety of documents that he argues demonstrated that Older Daughter "is willing to lie under oath" and that Mother's statements are "untrue." For instance, he submitted documents showing that the Division of Child and Family Services had investigated allegations Older Daughter had made that Younger Daughter sexually abused her siblings, that Mother had typed her daughters' statements for police, and that the girls' grandmother denied ever hearing Younger Daughter claim that Wamsley sexually abused her. He also submitted the results of

two polygraphs he had taken and a psychosexual evaluation showing that his denials to statements describing his daughters' allegations were "in the 'Non-Deceptive' range" and that he was not sexually attracted to children.

¶ 23   These documents, and others Wamsley submitted, fall into two broad categories—(1) impeachment evidence against Mother and Older Daughter and (2) evidence bolstering Wamsley's own denials. None of the evidence clearly shows that Older Daughter's and Mother's assertions are untruthful, nor does it reconcile the ambiguities in Younger Daughter's affidavit or the affidavit's inconsistencies with Younger Daughter's prior statements. Consequently, the conflicting nature of the evidentiary picture before the court simply would not support a finding that Wamsley's factual innocence had been "clearly establish[ed]." *See* Utah Code Ann. § 78B-9-401.5(1). So even if Wamsley's petition satisfied the requirements of subsections (2)(a) and (3)(a), the district court correctly determined that Wamsley failed to demonstrate a "bona fide and compelling issue of factual innocence" and that, as a result, he was not entitled to a hearing with regard to his conviction for abusing Younger Daughter. *See id.* § 78B-9-402(9)(c) (LexisNexis Supp. 2013) (providing that a petition for factual innocence does not justify a hearing unless the court "finds there is a bona fide and compelling issue of factual innocence"); *see also id.* § 78B-9-402(2)(a)(iv) (providing that the "material evidence" supporting a petition for factual innocence cannot be "merely impeachment evidence"); *id.* § 78B-9-401.5(1) (LexisNexis 2012) (defining "[b]ona fide and compelling issue of factual innocence" as "newly discovered material evidence" that, "if credible, would clearly establish the factual innocence of the petitioner").

¶ 24   With respect to the charge involving Older Daughter, there is even less justification for ordering a hearing because there is no evidence that would satisfy subsection (2)(a), which provides that "the material evidence" supporting a petitioner's "assertion of factual innocence" cannot be "merely impeachment evidence." *Id.* § 78B-9-402(2)(a)(iv) (LexisNexis Supp. 2013). As

we have discussed, Wamsley's petition was based solely on Younger Daughter's affidavit denying that he had ever "touched [Younger Daughter] inappropriately." He did not submit any evidence with his initial petition that called into question his conviction for abusing Older Daughter. And the only documents he submitted in response to the State's motion to dismiss that had any relevance to Older Daughter consisted entirely of impeachment evidence. Wamsley admits as much on appeal, arguing that a reasonable inference from the fact that "one victim now admits to being told what to say and trained using a diagram of the human body as a child makes it likely the other [child] was [coached] as well." He even characterizes the documents he submitted in response to the State's motion to dismiss "as impeachment evidence showing [that] both [Older Daughter] and [Mother] had lied, and continued to lie, under oath." Impeachment evidence is insufficient by itself to satisfy subsection (2)(a), let alone demonstrate a "bona fide and compelling issue of factual innocence." Utah Code Ann. § 78B-9-402(2)(a)(iv), (9)(c). We therefore conclude that the district court properly denied Wamsley's petition and had no obligation to hold a hearing before doing so.

CONCLUSION

¶ 25   We conclude that Wamsley's petition for postconviction relief was based solely on an equivocal affidavit and that the evidence did not establish a compelling bona fide issue of factual innocence. We also conclude that Wamsley relied entirely on impeachment evidence to demonstrate his factual innocence of charges involving Older Daughter. Consequently, we affirm the district court's decision dismissing the petition without holding a hearing.

_____